IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| JASON H. SYLVESTER,<br><br>    Plaintiff,<br><br><br><br>    vs.<br><br><br>AMERICA ONLINE, INC.,<br>    Defendant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br><br><br><br>Case No. 1:05-CV-08 TS |

This matter is before the Court on Defendant America Online, Inc.'s (AOL) Motion for Summary Judgment.[1]  For the reasons set forth below, the Court will grant the Motion.

I. UNDISPUTED FACTS

The following facts are undisputed.  On January 21, 2002, AOL hired Plaintiff Jason Sylvester (Sylvester) as a Customer Care Consultant to receive inbound calls. Sylvester received extensive training on how to follow essential "call flow" procedures during calls.  AOL regarded strict adherence to the call flow procedure during every call,

---

[1] Docket No. 20.

as an essential requirement of the position held by Sylvester.  Sylvester received progressively serious formal disciplinary actions on June 30, July 26, and August 9, 2003, for failure to follow the call flow as trained, any one of which could have resulted in termination.

On August 26, 2003, AOL again cited Sylvester for failure to follow the call flow properly.  Sylvester's supervisor noted his previous formal disciplinary action history for failure to follow the call flow and recommended that his employment be terminated. AOL's reason for termination was performance deficiency, specifically that Sylvester failed to meet the performance expectations set forth in the Final Written Counseling received August 9, 2003.[2]  Sylvester's employment was terminated August 26, 2003.

On June 20, 2004, Sylvester filed a signed, but unverified, Intake Questionnaire with the Equal Employment Opportunity Commission (EEOC).[3]  The form noted that the questionnaire was to be used "to make an official determination whether facts exist to prepare a charge of discrimination."[4]  On June 29, 2004, Sylvester received copies of his formal charge, drafted by an EEOC investigator for him to review, approve, sign and file.  On July 3, 2004, Sylvester signed and verified the charge,[5] and filed it between

---

[2] Docket No. 21, Ex. T.

[3] Docket No. 21, Ex. C.

[4] *Id.*

[5] Docket No. 21, Ex. F.

2

July 5 and July 12, 2004.[6]   The formal charge was date stamped "received" by the EEOC on July 12, 2004.[7]

On July 13, 2004, Sylvester received a letter from the EEOC investigator acknowledging receipt of Sylvester's "completed" formal charge.  The letter also informed Sylvester that his "charge is considered filed on June 20, 2004, which is the date EEOC received your initial paperwork."[8]

## II. POSITIONS OF THE PARTIES

Sylvester alleges that AOL violated the Americans with Disabilities Act of 1990 (ADA)[9] by: (1) denying Sylvester's request for disability accommodation on August 8, 2003; (2) terminating Sylvester for reasons due to his disability on August 26, 2003; and (3) terminating Sylvester in retaliation for requesting disability accommodation.  In response to AOL's Motion for Summary Judgment, Sylvester concedes the retaliation claim.[10]   Therefore, the Court will not address that claim further.

AOL moves for summary judgment on the grounds that Sylvester failed to exhaust the administrative remedies available to him.  Specifically, that Sylvester failed to timely file his charge of discrimination with the EEOC, a prerequisite to civil action

---

[6] Docket No. 26, p. 8; Docket No. 21, p. 3.

[7] Docket No. 21, Ex. F.

[8] *Id.*

[9] 42 U.S.C. §§ 12101-12213.

[10] Docket No. 26, p. 10.

claims arising from the ADA.[11]   AOL also moves for summary judgment contending that Sylvester has failed to meet his burden of showing a prima facie case.

## III. SUMMARY JUDGMENT

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[12]   The moving party need not carry the burden of producing evidence, but need only point to the "absence of evidence to support the non-moving party's case."[13]  The burden then shifts to the non-moving party[14] to "set forth specific facts," beyond the pleadings, to show there is a genuine issue of material fact for trial.[15]   Conclusory allegations made by the non-moving party will not suffice.[16]   If the non-moving party fails to make a sufficient showing on an essential element of its case, all of the other facts become immaterial[17] and the moving party is entitled to judgment as a matter of law.[18]   In considering whether

---

[11] *National RR Passenger Corp. v. Morgan*, 536 U.S. 101, 113-14 (2002).

[12] Fed. R. Civ. P. 56(c).

[13] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[14] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003).

[15] Fed. R. Civ. P. 56(c).

[16] *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

[17] *Celotex*, 477 U.S. at 323.

[18] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).

genuine issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[19] For the purposes of summary judgment, the Court construes all facts and reasonable inferences in the light most favorable to the nonmoving party.[20]

## IV. DISCUSSION

A. EXHAUSTION OF ADMINISTRATIVE REMEDIES

### 1. Denial of Reasonable Accommodation Claim

The threshold issue is whether Sylvester exhausted the administrative remedies available to him by timely filing his formal charge of discrimination with the EEOC. Title 42 U.S.C. § 2000e-5(e)(1) provides, as a prerequisite to filing suit, that an individual must file a charge with the EEOC within 300 days of the occurrence of an act of employment discrimination. Additionally, EEOC regulations, codified in 29 C.F.R. § 1601.9, require that a charge "shall be in writing and signed and shall be verified." To be verified, a charge must, at minimum, be "supported by an unsworn declaration in writing under penalty of perjury."[21]

The Supreme Court has stated, with regard to the timely filing of discrimination charges with the EEOC, that "strict adherence to the procedural requirements specified

---

[19] *See Anderson* at 249; *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[20] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Southwestern Bell Tel. Co.,* 925 F.2d 1288, 1292 (10th Cir. 1991).

[21] 29 C.F.R. § 1601.3(a).

by the legislature is the best guarantee of evenhanded administration of the law."[22]  By setting short deadlines for filing a charge, "Congress clearly intended to encourage the prompt processing of all charges of employment discrimination."[23]

In *Morgan*, the Court held that a discrete discriminatory act "occurred" on the day that it happened.[24]  Noting the great detail of 42 U.S.C. § 2000e,[25] the Court specifically rejected the "continuing violation" argument, when the denial of an employee's request was involved.  Citing the Court's own precedent,[26] it held that "mere continuity of employment, without more, is insufficient to prolong the life of a cause of action."[27] In the instant case, Sylvester alleges that on August 8, 2003, AOL denied his request for reasonable accommodation of his disability.  Under the Supreme Court's holding in *Morgan*,[28] the denial described by Sylvester in his deposition[29] is not a continuing violation but, rather, a discrete act.  Based on the earliest possible filing date of July 5,

---

[22] *Morgan*, 536 U.S. at 108.

[23] *Id.* at 109.

[24] *Id.*

[25] As made applicable to the ADA by 42 U.S.C. § 12117.

[26] *Delaware State College v. Ricks*, 449 U.S. 250 (1980).

[27] *Morgan*, 536 U.S. at 112-13  (quoting *Ricks*, 449 U.S. at 257).

[28] *Id.*

[29] Docket No. 26, Ex. 1, p. 172.

2004, Sylvester filed his formal charge at least 332 days after August 8, 2003.

Sylvester filed his Intake Questionnaire on June 20, 2003, 317 days after August 8,

2003, the date Sylvester allegedly requested a disability accommodation.[30]

Both the Intake Questionnaire and the completed charge were filed outside the

300-day statutory period.  Therefore, the Court finds that Sylvester failed to exhaust the

administrative remedies available to him on his alleged denial of reasonable

accommodation claim, as required, and the claim is procedurally barred.

2. Discriminatory Termination Claim

It is a closer question whether Sylvester's discriminatory termination claim was

filed within the 300-day period allowed by statute.  This question requires a

determination of whether the Intake Questionnaire, filed within the 300-day period,

constituted a filed charge to which the formal charge, filed outside of the statutory

period, could relate back for purposes of the statutory limitation.

Courts are split on the question of whether to allow an untimely formal charge to

relate back to a timely filed, but unverified, Intake Questionnaire.  The Tenth Circuit

noted this split in a 1999 unpublished opinion, *Welsh v. City of Shawnee*.[31]  According to

the court in *Welsh*, the Eighth Circuit generally rejects allowing the two to be read

together such that a verified charge filed after the filing deadline relates back to the

Intake Questionnaire and makes the questionnaire a timely filed charge.[32]  The Seventh

---

[30] Docket No. 26, p. 7; Docket No. 21, p. 3.

[31] 182 F.3d 934, 1999 WL 345597 (10th Cir. 1999) (unpublished opinion).

[32] *Id.* at *16 (citing *Shempert v. Harwick Chem. Corp.*, 151 F.3d
793, 796 (8th Cir. 1998), cert. denied, 119 S.Ct. 1028).

7

Circuit, however, has held "that a timely filed questionnaire followed by an untimely but verified formal charge 'may be sufficient to constitute a charge'"[33] in circumstances where both the EEOC and plaintiff treat the questionnaire as the charge itself.[34]  The court stated that the formal charge is "the primary, and usually the only, place to which courts look to determine whether a plaintiff timely and properly exhausted [his] claims before the EEOC."[35]

The court in *Welsh* also noted, citing a 1989 case,[36] that the Tenth Circuit has held that "a subsequently filed formal charge may amend the plaintiff's unverified but timely filed EEOC 'complaint' under 29 C.F.R. § 1601.12(b), at least where there is no showing of prejudice to the charged party."  Title 29 C.F.R. § 1601.12(b) reads, in relevant part:

> A charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of.  A charge may be amended to cure technical defects or omissions, *including failure to verify the charge*, or to clarify and amplify allegations made therein.  Such amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received.[37]

---

[33] *Id. (citing Philbin v. General Elec. Capital Auto Lease, Inc.*, 929 F.2d 321, 322 (7th Cir. 1991)).

[34] *Id.*

[35] *Id.*

[36] *Peterson v. City of Wichita*, 888 F.2d 1307, 1308-09 (10th Cir. 1989).

[37] 29 C.F.R. § 1601.12 (b) (emphasis added).

In the present case, several facts weigh in favor of allowing the formal charge to relate back to the date the Intake Questionnaire was filed.  These favorable facts include that the Intake Questionnaire, submitted on day 299 of the statutory period,[38] included, in writing, all of the substantive information that a charge is required to contain.[39]  Sylvester's Intake Questionnaire detailed the full name and telephone number of the person making the charge, as well as identified, by full name and address, the company against whom the charge was made and the approximate number of people employed by the employer.  It contained the dates of hire and of termination, as well as the date of the most recent harm.  The Intake Questionnaire included a clear and concise statement describing the harm and the employer action that was the subject of the charge of discrimination.  Sylvester also stated the reason AOL gave for terminating him and listed the name of another employee who behaved similarly but was treated differently.  Also provided was a description of Sylvester's disabilities, and how they affected him and limited his ordinary daily activities.  Sylvester also noted on the questionnaire the medications he was taking.  Sylvester described who he notified at AOL of his condition, the date when that notification occurred, the extent of his accommodation request and his employer's response.  Sylvester checked a box on the questionnaire to indicate that he had not sought help about this problem from any agency, union or attorney. Sylvester signed, but did not verify, the Intake

---

[38] June 20, 2004.

[39] See 29 C.F.R. § 1601.12(a) and (b).

Questionnaire.  It is also significant that the formal charge did not contain different allegations or information than submitted on the Intake Questionnaire.

Additionally, the EEOC acted on the Intake Questionnaire to serve notice on AOL.[40]  Although AOL disputes that it received notice of the charge before July 22, 2004,[41] the summary judgment standard requires that the Court view the evidence in the light most favorable to the non-moving party.  As such, the Court accepts, for the purposes of this Motion, the fact that the EEOC used the Intake Questionnaire to notify AOL of the charge.

The EEOC's decision to allow the formal charge to relate back to the June 20, 2004 filing of the Intake Questionnaire, is also a favorable factor.  The EEOC indicated this decision in a letter to Sylvester dated July 13, 2004, which stated, "Your charge is considered filed on June 20, 2004, which is the date EEOC received your initial paperwork."[42] This letter was received by Sylvester after he had submitted his formal charge, date stamped "received" July 12, 2004, on day 322 of the statutory period.

It appears from this letter that the EEOC determined that the Intake Questionnaire did contain sufficient substantive information to initiate the charging process.  This interpretation is also supported by the EEOC's action, based on the Intake Questionnaire, to notify AOL of the charge on June 22, 2004.

---

[40] Docket No. 26, Ex. 2.

[41] *Id.*

[42] *Id.*

In light of the position of the Tenth Circuit, articulated in *Welsh* and *Peterson*, the Court finds that the Intake Questionnaire filed by Sylvester meets the substantive requirements of a charge, under 29 C.F.R. § 6101.12(a).  As AOL suffers no prejudice as a result, and as the formal charge was verified, this Court holds that the formal charge cured the technical deficiency of a lack of verification, as allowed by 29 C.F.R. § 6101.12(b).  As a result, the Court finds that the formal charge, filed sometime between July 5 and July 12, relates back to the June 20, 2004 filing of the Intake Questionnaire. Sylvester, therefore, has met the civil suit prerequisite of an ADA action by first exhausting the administrative remedies available to him on his claim of discriminatory termination.[43]

B. LACK OF PRIMA FACIE CASE

In AOL's Motion for Summary Judgment, it asserts that Sylvester has failed to demonstrate a prima facie case for discrimination.  The burden shifting framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*[44] applies to disability discrimination cases[45] where, as in the present case, Sylvester has no direct evidence of discrimination and AOL disputes any reliance upon disability for its

---

[43] *McCall v. Board of Com'rs of County of Shawnee, KS*, 291 F.Supp.2d 1216, 1222-23 (D.Kan., 2003), citing *Welsh,* 1999 WL 345597 at *5.

[44] 411 U.S. 792, 802-04 (1973).

[45] *Hardy v. S.F. Phosphates Ltd. Co.*, 185 F.3d 1076, 1079 (10th Cir. 1999); *Morgan v. Hilti*, 108 F.3d 1319, 1323 (10th Cir. 1997).

termination decision.[46]   Under this burden-shifting framework, Sylvester "has the burden of articulating a prima facie case of discrimination."[47]

To establish a prima facie case under the ADA, the plaintiff must demonstrate: (1) that he is a disabled person within the meaning of the ADA; (2) that he is qualified, and able to perform the essential functions of the job, with or without reasonable accommodation; and (3) that AOL terminated his employment under circumstances which give rise to an inference that the termination was based on his disability.[48]   Once a plaintiff demonstrates a genuine issue of material fact as to each element of the prima facie case, the burden then shifts to the employer to articulate a legitimate nondiscriminatory reason for its adverse employment decision.  If the employer produces a nondiscriminatory reason for its decision, the burden "shifts back to the plaintiff to present evidence such that a reasonable jury could conclude that the proffered nondiscriminatory reason for the employment action is pretextual or unworthy of belief."[49]   Pretext for employment discrimination can be shown "by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally

---

[46] *Hilti,* 108 F.3d at 1324.

[47] *Hardy*, 185 F.3d at 1079.

[48] *Hilti*, 108 F.3d at 1324.

[49] *Id.* (internal quotation marks omitted).

find them unworthy of credence."[50]  The Tenth Circuit in *Hilti* further noted, "mere conjecture that the employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment."[51]

The first prima facie element requires Sylvester to show that he is a disabled person within the meaning of the ADA.  The Supreme Court has stated that "merely having an impairment does not make one disabled for purposes of the ADA."[52]  More is required than the mere production of a conclusory medical diagnosis of impairment.[53]

The ADA defines disability with respect to an individual as "a physical or mental impairment that substantially limits one or more of the major life activities."[54]  The ADA requires evidence that the claimant demonstrate that the impairment both limits a major life activity[55] and is substantial in the context of the major life activity asserted.[56]  In *Toyota*, the Supreme Court relied on the EEOC's definition of the term "substantially

---

[50] *Id.* at 1323.

[51] *Id.*

[52] *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 195 (2002).

[53] *Id.* at 196.

[54] 42 U.S.C. § 12102 (2)(A).

[55] *Toyota*, 534 U.S. at 195.

[56] *Id.*

limited" which defined the term to mean: "unable to perform a major life activity that the average person in the general population can perform."[57]

Analysis under 42 U.S.C. § 12102(2)(A), pursuant to establishing the first prima facie element, requires a three-part inquiry:[58]   (1) whether the condition is a recognized impairment under the ADA, (2) whether the major life activity identified by the plaintiff constitutes a major life activity under the ADA, and (3) whether the impairment substantially limits the major life activity specifically identified.[59]   Part three requires that the plaintiff establish that there exists an issue of material fact that the impairment suffered substantially limits the performance of the major life activity "as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity."[60]

Sylvester claims that he mainly suffers from "schizo-affective disorder with chronic dysthymia, recurrent major depression, and attention deficit disorder (ADD)."[61]

---

[57] *Id.*

[58] *MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005).

[59] *Id.* at 1275; *see also*, *Doebele v. Sprint/United Management Co.*, 342 F.3d 1117, 1129 (10th Cir. 2003).

[60]  *MacKenzie*, 414 F.3d at 1275-76.

[61] Docket No. 26, p. 11.

Case law supports Sylvester's assertion that depression[62] and ADD[63] may constitute an impairment within the meaning of the ADA.  The Court accepts, for the limited purpose of this Motion, that schizo-affective disorder may also constitute an impairment under the ADA.

Sylvester submits that these named impairments affect the major life activities of thinking, concentrating, reading, writing, learning, sleeping and interacting with others. The Tenth Circuit, has held that reading,[64] learning,[65] and sleeping[66] are major life activities and has assumed that thinking[67] and interacting with others[68] are as well. Concentrating, however, is not.[69]  The Court notes that the Sixth Circuit has held writing to be a major life activity,[70] and will assume likewise for the purpose of this Motion.

---

[62] *Doyal v. Oklahoma Heart, Inc.*, 213 F.3d 492, 495 (10th Cir. 2000).

[63] *Doebele,* 342 F.3d at 1129.

[64] *Rothburg v. Law School Admission Council, Inc.*, 102 Fed.Appx. 122, 124 (10th Cir. 2004) (unpublished opinion).

[65] *Doyal,* 213 F.3d at 496.

[66] *Id.*

[67] *Id.*

[68] *Id.*

[69] *Doebele*, 342 F.3d at 1130.

[70] *Gonzales v. Nat'l Bd. Of Med. Exam'rs.*, 225 F.3d 620, 626 (6th Cir. 2000).

Sylvester points to his deposition answers as evidence of the connection between his impairments and their limitation on his major life activities.  In his deposition, Sylvester stated that sometimes he would get so stressed out about the job and his supervisor disciplining him that he did not even sleep at night.[71]  Sylvester noted that the two most important things about how his disabilities affect him are that he feels he does not learn as fast as the regular person, and when he has a task that is overwhelming, he gets so much anxiety that he puts it off until the last minute.[72]  He also stated that if somebody pressures him and "rides him hard" to get him to do something, he gets flustered and will not do as well.  Sylvester added that anxiety triggers insomnia, which leads to more anxiety, which leads to worse work performance.  He described this as "a vicious cycle."[73]

The critical question is whether Sylvester is disabled under the ADA.  This question turns on his ability to perform "the variety of tasks central to most peoples lives, not whether the claimant is unable to perform the tasks associated with [his] specific job."[74]

The Court acknowledges that the inquiry into whether an impairment is a substantial limitation of a major life activity is an individualized and fact-intensive

---

[71] Docket No. 26, Ex. 1, p. 51.

[72] *Id.* at p. 60.

[73] *Id.*

[74] *Toyota*, 534 U.S. at 200-01.

question of the type generally reserved for a finder of fact.[75]   However, the Court also acknowledges that it "must enter judgment as a matter of law in favor of the moving party if there is no legally sufficient evidentiary basis"[76] for the claim.

In the present case, Sylvester's deposition made particular reference to his ability to learn and sleep.  While he specifically asserted that he learns slower than others, he does not produce comparative evidence to support his contention.  His sleep interference claim is similarly flawed, and additionally suffers from a mis-attribution of cause and effect.  Sylvester's deposition indicates that he was unable to sleep due to anxiety about being reprimanded at work, not because of his schizo-affective disorder with chronic dysthymia, recurrent major depression, or ADD.  It is well established that inability to perform a single job, or to work under a particular supervisor does not show a disability within the meaning of the ADA.[77]

The critical connection for establishing that Sylvester qualifies as a person with a disability under the ADA is between Sylvester's impairments and their impact on his major life activities, regardless of his job.  The focus of the inquiry is to be directed at Sylvester's ability to perform the major life activities he has listed as substantially limited by his disability.

------

[75]  *Doebele*, 342 F.3d at 1129 (citing *Bristol v. Bd. of County Comm'rs of the County of Clear Creak*, 281 F.3d 1148, 1158-60 (10th Cir. 2002).

[76] *Bristol v. Bd. of County Comm'rs of the County of Clear Creak*, 312 F.3d 1213, 1216-17 (10th Cir. 2002) (reheard *en banc*).

[77] *MacKenzie*, 414 F.3d at 1276.

In the present case, there is a dearth of comparative evidence presented to show how Sylvester's impairments have rendered him substantially limited or unable to think, read, write, learn, sleep or interact with others in the context of his everyday life. The Court finds that Sylvester's deposition answers fail to establish that there exists an issue of material fact that his impairments substantially limit his performance of any of the major life activities he has named, as compared to the average person in the general population, regardless of his job.

The Court finds that Sylvester's failure to establish a causal link between his named impairments and a substantial limitation or inability to think, read, write, learn, sleep or interact with others, compared to the average person, is fatal to his prima facie claim.   As a result, the Court finds that Sylvester has not shown that his schizo-affective disorder with chronic dysthymia, recurrent major depression, and/or ADD have rendered him comparatively unable or "significantly restricted"[78] from performing a major life activity that the average person in the general population can perform.  Sylvester has failed to establish his prima facie case–specifically the first element, that he is a disabled person under the ADA.  Therefore, the Court need not address the remaining two elements of the prima facie burden.

C. LACK OF EVIDENCE TO SHOW PROFFERED REASON WAS PRETEXTUAL

The Court also notes that even if Sylvester had met his prima facie burden, his claim would still founder for failure to present evidence that AOL's proffered reason for the employment action was pretextual and unworthy of belief.   As noted, mere

---

[78] 29 C.F.R. § 1630.2(j)(1)(ii).

conjecture that an employer's explanation is a pretext for intentional discrimination is an insufficient basis to deny summary judgment.[79]  The plaintiff must show that the reason proffered by the employer is unworthy of credence, such that a reasonable jury could conclude that disability was a determining factor in the adverse employment decision.[80]

In the present case, AOL has produced extensive documentation to support its employment decision reason.   AOL's documentation includes periodic observation and feedback evaluation forms from various supervisors, in addition to the formal disciplinary actions.  These consistently support the conclusion that Sylvester had difficulty meeting AOL's standards with regard to following the call flow.  As AOL regarded strict adherence to the call flow to be an essential function, these evaluations provide a progressive and reasonable support for AOL's employment decision.

It is undisputed that on August 26, 2003, Sylvester was cited for failure to follow the call flow properly.[81]  Sylvester disputes that he failed to follow the call flow on August 26, 2003.[82]  However, he has produced no evidence, other than his own evaluation and speculation, to challenge the credibility of his supervisor's evaluation of his performance on August 26, 2003, which led to his termination.

The Tenth Circuit has provided a clear standard to apply to Sylvester's contention that he failed to follow the call flow on August 26, 2003.  That court stated, "it

---

[79] *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988).

[80] *Id.* (internal quotation marks omitted).

[81] Docket No. 21, p. xii, ¶46.

[82] Docket No. 26, p. 5,¶46.

is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of his own relative performance."[83]  When addressing a claim of pretext, the court must examine "the facts as they appear to the person making the decision to terminate the plaintiff."[84]  According to his deposition, Sylvester does not doubt, nor does he refute, that his supervisor sincerely believed he had problems complying with the call flow.[85]

Sylvester does not point to any evidence that sufficiently raises an issue of fact showing weakness, implausibility, inconsistency or contradiction with AOL's evaluation of his performance, or its proffered reason for his termination.  Sylvester does not establish a link between his asserted disabilities and AOL's termination decision.

Thus, the Court finds, as a matter of law, that Sylvester has failed to meet his evidentiary burden on summary judgment of showing that AOL's proffered reason for its employment action was pretextual.  As a result, Sylvester's claim that AOL terminated him based on his disability fails.

## V. CONCLUSION

Sylvester failed to exhaust the administrative remedies available to him by failing to timely file a charge with the EEOC and, as a result, his accommodation request claim is procedurally barred.  As to his discriminatory termination claim, Sylvester has failed to meet the prima facie burden of showing that he qualifies as disabled according to the

---

[83] *Furr v. Seagate Tech. Inc.*, 82 F.3d 980, 988 (10th Cir. 1996).

[84] *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000).

[85] Docket No. 21, Ex. B, 43:6-45:3.

20

ADA.  He has also failed to raise a genuine issue of material fact showing that AOL's

reason for terminating his employment was pretextual.  Since Sylvester must do both,

his discriminatory termination claim fails.  Sylvester conceded his retaliation claim.

Therefore, AOL is entitled to a judgment as a matter of law on all claims.

VI. ORDER

It is therefore

ORDERED that Defendant AOL's Motion for Summary Judgment (Docket No.

20) is GRANTED. It is further

ORDERED that judgment shall enter in favor of Defendant America Online, Inc.

and against Plaintiff Jason Sylvester on all claims.

The Clerk of the Court is directed to close this case.

DATED June 27, 2006.

BY THE COURT:

_____

TED STEWART
United States District Judge